IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-03140-NYW

CELENA MARTINEZ,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, d/b/a Department of Aviation,

    Defendant.

_____

**MEMORANDUM OPINION AND ORDER**
_____

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Defendant the City and County of Denver's d/b/a Department of Aviation ("Defendant" or "the Department") Motion for Summary Judgment ("the Motion") [#33, filed December 20, 2018]. Plaintiff Celena Martinez ("Plaintiff" or "Ms. Martinez") filed a Response on January 23, 2019 [#36] and the Department filed a Reply on February 1, 2019 [#37]. The matter is now fully briefed and ready for decision. The undersigned Magistrate Judge fully presides over this matter pursuant to 28 U.S.C. § 636(c), the Order of Reference dated February 13, 2018 [#15] and the Parties' consent [#10; #13]. After careful consideration of the Motion and the applicable law, the court finds there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

    Ms. Martinez filed this action on December 27, 2017, bringing three claims for sex/pregnancy discrimination, race-based discrimination, and unlawful retaliation. [#1 at ¶¶ 33–

61]. Ms. Martinez, formerly an employee at Denver International Airport, asserts that she was discriminated against as a nursing mother and as a Hispanic woman during her employment as a contract administrator at the Department. *See generally* [#1]. In the Complaint, Ms. Martinez references a "Right to Sue" Letter issued by the Equal Opportunity Employment Commission dated March 17, 2015. [*Id.* at ¶ 7].

Defendant filed the instant Motion for Summary Judgment on December 20, 2018 at the close of discovery. [#33]. Plaintiff filed a Response, contesting several of Defendant's facts and proffering several of her own. [#36]. Defendant filed a Reply brief contesting several of these material facts. [#37]. Accordingly, before the court can proceed to the legal issues and underlying merit of the case, the court must first address the proffered material facts and the corresponding objections.

## UNDISPUTED MATERIAL FACTS[1]

1. Plaintiff began her employment with the City and County of Denver in April 2002 and began working at Denver International Airport ("DIA") as a contract administrator in December 2012. [#33 at 1 ¶ 1; #36 at 2 ¶ 1].

2. Plaintiff was on maternity leave from June 6, 2014 through August 17, 2014, and worked part-time from August 18, 2014 through September 22, 2014. [#33 at 1 ¶ 2; #36 at 2 ¶ 1].

3. Upon her return, Plaintiff needed to express milk and was given a vacant office ("the vacant office") to use for that purpose and a laptop to work from while she pumped. [#33 at 1 ¶ 3; #36 at 2 ¶ 1].

---

[1] Not all of the Parties' offered facts are recounted here. Some offered facts are immaterial, some are duplicative, and many of Plaintiff's facts are either argument, recitations of the allegations in the Complaint without evidentiary support, or legal conclusions unsupported by any evidence. *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d 1192, 1194 (D. Colo. 2017).

2

**4.** In mid-January 2015, the vacant office was assigned to another employee and Plaintiff was directed to the nursing mothers' room ("the nursing room").[2] [#33-3 at ¶ 6].

**5.** Beginning January 5, 2015, Plaintiff made a series of complaints about the nursing room which Defendants attempted to address. [#33-3 at ¶ 7 (indicating Defendant's receipt of the complaints); #33-5 at 1 (email from Department employee Dani Brown offering to "roll one of our office chairs down there [the nursing room]" in the event Plaintiff required it); #33-6 (email exchange between Plaintiff and Department employee Susan Moore wherein Ms. Moore states that she has forwarded on the complaint to "Sherry Grams" to "check [it] out"); #33-7 (late February/early March 2015 email exchange between Department employees Ian Alexander, Sherry Grams, and Susan Moore regarding ongoing cleaning efforts); #33-8 (mid-March email exchange regarding gnats in the nursing room and Defendant's efforts to remediate); #33-9 (February 26, 2015 email from Department employee John Sarmiento stating that the nursing room had "a detailed cleaning and has been sterilized"); #33-10 (email exchange between Dani Brown, Greg Hegarty, Plaintiff, and Susan Moore where the employees solicit Plaintiff's advice for the nursing room and further discussion over remediating an unspecified issue with the floor drain and a too-bright light)].

---

[2] Plaintiff disputes this fact, stating "upon information and belief the room remained vacant." [#36 at 2]. But argument of counsel is not a sufficient response to a movant's evidence at the summary judgment stage. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). Because Plaintiff fails to offer evidence to rebut Defendant's fact which is supported by unchallenged and admissible evidence, the court accepts this fact as undisputed.

**6.** Based on Plaintiff's concerns about the condition of the nursing room, Defendant allowed Plaintiff to work from home until her concerns could be resolved. Therefore, Plaintiff worked from home intermittently from mid-January 2015 through March 2, 2015. [#33-3 at ¶ 8].[3]

**7.** When she was at the office, Plaintiff was permitted to express breast milk in the vacant office until it was reassigned to another employee. [#33-3 at ¶¶ 4, 8].[4]

**8.** Plaintiff applied for an Airline Real Estate Director position and a Director of Food and Beverage Concessions, both at DIA, on June 11, 2015. [#33-11 at 1–5 (Airline Real Estate Director job posting); *id.* at 6–12 (Plaintiff's application); #33-12 at 1–5 (Director of Food and Beverage Concessions job posting); *id.* at 6–11 (Plaintiff's application)].[5]

---

[3] Plaintiff disputes this Material Fact "as it draws a conclusion as to whether the Defendant really attempted to resolve the issue." [#36 at 2]. Plaintiff adduces no evidence to dispute the actions or communications taken by Defendant, but challenges the sincerity of such efforts. While this court declines to pass on the sincerity of the actions taken by Defendant on summary judgment, it finds that at this juncture, Ms. Martinez has not put forth sufficient evidence that undermines the occurrence of such acts. *Cf. Makeen v. Comcast Cable Commc'ns, LLC, No.* 09-CV-02595-WYD-MEH, 2011 WL 3300389, at *4 (D. Colo. Aug. 2, 2011) (finding that the evidence presented on summary judgment was insufficient to undermine the sincerity of Defendant's belief).

[4] Plaintiff disputes this in a summary fashion, stating "it misstates the facts as they occurred." [#36 at 2]. But as the court has already explained, mere argument of counsel or a cursory, unsupported denial of the movant's evidence is not sufficient at the summary judgment stage. *Bones*, 366 F.3d at 875. Ms. Martinez fails to provide any testimony under oath, or any other admissible evidence, to refute this material fact.

[5] *See supra* n.4.

9. The posting for Director of Food and Beverage Concessions was cancelled and not filled. [#33-1 at ¶ 4 (Senior Human Resources Business Partner Janice Hathaway's affidavit); #33-2 at 97:7–19[6] (Plaintiff's deposition testimony that the position was cancelled and not filled)].[7]

10. Angela Padalecki, another Department employee, was offered the Airline Real Estate Director position on September 4, 2015, and she accepted on September 10, 2015. Ms. Padalecki was pregnant at the time. [#33-11 at 13–24 (Angela Padalecki's application); #33-1 at ¶ 6 (Ms. Hathaway's affidavit reflecting Ms. Padalecki's job offer and acceptance while pregnant)].

11. Plaintiff submitted EEOC Charge No. 846-2015-15689 on September 25, 2015, asserting sex discrimination and retaliation ("the September 25 Charge"). [#33-14; #36 at 2 ¶ 1].

12. Angela Padalecki became Plaintiff's supervisor in February 2016. [#1 at ¶ 26; #36 at 2 ¶ 1].

13. In April 2016, Plaintiff received her 2015 performance evaluation and received satisfactory scores. [*Id.* at ¶ 27; #36 at 2 ¶ 1].

14. On July 6, 2016, Plaintiff received a contemplation of discipline letter ("the July 6 Letter"). [#33-1 at ¶ 9; #33-15 (the letter); #36 at 2 ¶ 1].

15. The conduct described in that letter led to Plaintiff being disciplined with a written reprimand on August 22, 2016. [#33-1 at ¶ 9; #33-16 (notification of reprimand); #36 at 2 ¶ 1].

---

[6] In relying upon deposition testimony, the court uses the convention that refers to the docket number assigned by the Electronic Court Filing ("ECF") system, but the page and line number in the original transcript, for consistency and ease of identification.

[7] *See supra* n.4. Indeed, the court is puzzled by Plaintiff's dispute of this material fact, given her unequivocal deposition testimony that the position was canceled, and no one received the position from that posting.

16. Plaintiff received a second contemplation of discipline letter on December 22, 2016 ("the December 22 Letter"). [#33-1 at ¶ 10; #33-17 (the letter); #36 at 2 ¶ 1].

17. The conduct described in that letter led to Plaintiff being disciplined with a temporary reduction in pay on January 24, 2017. [#33-1 at ¶ 10; #33-18 (notification of reprimand); #36 at 2 ¶ 1].

18. Plaintiff received a third contemplation of discipline letter on June 23, 2017 ("the June 23 Letter").[8] [#33-1 at ¶ 11; #33-19 (the letter); #36 at 2 ¶ 1].

19. The conduct described in that letter led to Plaintiff's termination on July 18, 2017. [#33-1 at ¶ 11; #33-20 (notification of dismissal); #36 at 2 ¶ 1].

20. Between 2006 to 2016, Plaintiff received several accolades and letters of commendation and/or recommendation. [#36-1].[9]

21. Martinez emailed Department Human Resources employee Karen K. Niparko, stating, "When I told my supervisor that I was planning to report the discrimination and retaliation to you, she essentially told me that if I did that, it would be bad for my career in the long term." [#36-5 at 3].[10]

---

[8] Janice Hathaway's affidavit reports this date as June 19, 2017. [#33-1 at ¶ 11]. But the letter is clearly dated June 23. [#33-19]. The court accepts this fact given that Defendant does not challenge it and the court's finding that the discrepancy is legally immaterial to the court's decision and the factually immaterial to the underlying course of events. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1261 (10th Cir. 2008) ("[A] a minor discrepancy does not amount to a dispute of *material* fact for the jury precluding summary judgment." (emphasis in original)).

[9] Defendant challenges this fact on the basis that Plaintiff's Exhibit 1 "does not include information from the relevant time period, and, therefore, does not support the alleged facts." [#37 at 2]. But the court's examination of Plaintiff's Exhibit 1 reveals there are several letters of recommendation [#36-1 at 3, 5] and other letters of praise [*id.* at 4, 6] from 2006 to 2016. Accordingly, the court has revised the material fact to reflect the specific time frame supported by Exhibit 1. Plaintiff also offers that she "consistently received positive performance evaluations and feedback." The court concludes that this is a characterization of the material facts, rather than material fact itself.

[10] Plaintiff articulates this fact as "[s]hortly thereafter, instead of working with Martinez, the city

The court declines to adopt the remainder of Plaintiff's proffered undisputed facts for a variety of reasons. For example, Ms. Martinez asserts "[i]mportantly a number of Martinez's fellow employees who where [sic] not requesting milking alternative and have not complained were routinely permitted to work the flexible hours." [#36 at 4 ¶ 10 (citing Exhibit 14)]. But Plaintiff's cited evidence, Exhibit 14, does not support this proposed fact. Rather, Exhibit 14 is a collection of pictures of the nursing mother's room at the Airport. [#36-14]. At summary judgment, it is Plaintiff's responsibility to support her alleged undisputed facts, and apprise the court of how to find such evidence in the record. *Alvariza v. Home Depot*, 506 F. Supp. 2d 451, 459 (D. Colo. 2007) ("Judges are not like pigs, hunting for truffles buried in the record." (formatting altered) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991))).

Similarly, some of the proffered facts were characterized in a manner that was not consistent with the evidence in the record. For instance, Ms. Martinez offered the following as an undisputed fact: "Senior Vice President of Concessions Neil Maxfield told Plaintiff she could no longer use the vacant office in late 2014. Further he expressed his belief that she should not even be working while she continues to breastfeed her child." [#36 at 3 ¶ 5]. But an examination of Exhibit 4 upon which this proffered fact is based reflects no remarks from Mr. Maxfield. [#36-4]. In addition, Plaintiff's own deposition undercuts her suggestion that Mr. Maxfield's comments indicated bias against lactating mothers or women generally, rather Mr. Maxfield's comment was

---

began their first of many years of retaliation. Martinez was even told that further complaints about the conditions would be disastrous to her career disastrous to her career," [#36 at 3], and Defendant challenges it, arguing that "[t]here are no such facts within Plaintiff's Exhibits 5 or 6." [#27 at 2 ¶¶ 7-8]. The court's review of Plaintiff's Exhibit 5 led to its rewording to reflect the actual correspondence, but otherwise the court finds no basis to accept the truth of the matter asserted, given the fact that the statement is not made under oath by Ms. Martinez nor does she provide a declaration attesting that all the statements made in her correspondence with Defendant are truthful under the penalty of perjury.

7

referring to Plaintiff's work while physically in the act of expressing breast milk. [#33-2 at 3 (35:9–15) (Plaintiff: "It was pretty clear [that Mr. Maxfield] didn't think I should be utilizing a laptop or having to work while I was in the vacant office." Question: "So when you take a break to express milk, it was [Mr. Maxfield's] belief that you should be able to have that time free of work?" Plaintiff: "Correct.")]. Plaintiff may not simply pick and choose portions of her deposition testimony that support her claims, while ignoring those portions that undercut them. *See e.g. Williams v. Platt*, No. CIV-03-281-C, 2006 WL 2042605, at *2 (W.D. Okla. July 18, 2006).

## LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Nevertheless, the content of the evidence presented at summary judgment must be admissible to be considered. *See* Fed. R. Civ. P. 56(c)(4); *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable

8

party could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

**I. Summary Judgment in Favor of Defendant is Appropriate on Plaintiff's Claims of Race-Based Discrimination**

Plaintiff's Complaint brings a claim for race-based discrimination. [#1 at ¶¶ 44–53]. Specifically, Plaintiff alleges that she was treated differently than similarly situated non-Hispanic employees. [*Id.*]. But the EEOC charge discussed above reflects only a claim for sex discrimination and does not mention race. [#33-14 at 1]. Defendant argues that it is entitled to summary judgment for failure to exhaust administrative remedies. [#33 at 3–5]. The court agrees, and further finds that even if Plaintiff had exhausted her remedies, Defendant is entitled to summary judgment in substance as well.

**A. Failure to Exhaust Administrative Remedies.**

Under Title VII, a plaintiff must file a timely employment discrimination charge before filing suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 922 (10th Cir. 2016). "The rule in *Morgan* requires a Title VII plaintiff to exhaust administrative remedies for each individual discriminatory or retaliatory act." *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). The old rule in the Tenth Circuit was that failure to exhaust divested the court of jurisdiction to review a complaint. *See, e.g.*, *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004). But in 2018, the court reversed itself and held that exhaustion is no longer a jurisdictional prerequisite but rather an affirmative defense. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018)

("[T]he full court now holds that a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim.").[11]

Plaintiff argues that she filed a second, supplemental EEOC charge that included a race-based discrimination claim on June 27, 2016. [#36 at 9]. Plaintiff has included a number of emails she exchanged with the EEOC investigator in which she discussed amending her prior EEOC complaint or filing a new charge of discrimination. [*Id.* at 10–11; #36-10; #36-9; #36-11; #36-12; #36-13]. Plaintiff thus contends that the EEOC investigator was therefore aware of a race-based complaint which means "[t]here is no doubt that the EEOC was given the opportunity in this case to settle all disputes through conference or mediation" and the race-based claim was amended into the prior EEOC Complaint. [#36 at 11].

Plaintiff's reliance on email correspondence with the investigator and the EEOC's notice is misplaced for multiple reasons. First, the exhaustion requirement is just that—a requirement that the Plaintiff bring a claim to the EEOC and that the EEOC process then run its course to the issuance of a Right to Sue letter. *See Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) ("A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter."

---

[11] As an affirmative defense, exhaustion is now subject to waiver, estoppel, and equitable tolling. *Id.* at 1187 n.11. This case was filed in December 2017 or approximately eight months before the Tenth Circuit's decision in *Lincoln*. At the time the case was filed, exhaustion was not subject to waiver because it implicated the court's subject-matter jurisdiction. *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). Therefore, it was not until eight months after the beginning of the litigation that Defendant was made aware that failure to timely assert the exhaustion defense could waive that defense. In addition, given precedent in the Tenth Circuit that an affirmative defense may be raised for the first time at summary judgment, *e.g., Halprin v. Equitable Life Assur. Soc. of U.S.*, 267 F. Supp. 2d 1030, 1040 (D. Colo. 2003), and given that Plaintiff substantively responds without making a waiver argument, the court finds that Defendant has not waived this defense and considers it on the merits.

(quotations omitted)). While at times there is a different filing that can constitute a charge, the general rule remains that the court typically looks to the formal charge itself. *Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017). Plaintiff implicitly concedes, as she must, that her original charge did not disclose a claim for race discrimination. [#36 at 5 ¶ 12]. And for the reasons stated below, her correspondence, attempts to amend, and what is characterized as a "second" charge are still inadequate to exhaust administrative remedies for her race-based discrimination claim.

Next, notice to the EEOC and the employer is the central policy goal animating this requirement, *Lincoln*, 900 F.3d at 1181, but the requirement contemplates the completion of a process, not any party's mere subjective awareness of a claim. The purpose of administrative exhaustion is to give adequate notice to the charged party of the alleged violation, and to give the EEOC an opportunity to investigate and conciliate the claims. *See Jones*, 856 F.3d at 1290. A party may amend an EEOC charge to add in a new claim, 29 C.F.R. § 1601.12(b), and that is what Plaintiff and the investigator discussed in Exhibit 13 to Plaintiff's Response. [#36-13]. On July 27, 2017, Plaintiff send an email to the investigator asking "what steps are best moving forward." [*Id.*]. That same day, the investigator responded, "I can amend the charge for you to include discharge in retaliation for participating in a protected activity. Please provide the dismissal letter and any other relevant information." [*Id.*]. There is no discussion of a race-based complaint (indeed the opposite, the correspondence refers to Plaintiff's retaliation claim discussed below); there is no evidence that the original EEOC charge was ever actually amended; and there is no basis to conclude that the facts as stated in the original charge, the correspondence, or the "second" charge would have been would have prompted an investigation of her race-based discrimination claim.

Indeed, in looking at charges, the court liberally construes it to determine whether the facts

disclosed would prompt an investigation into Ms. Martinez's race-based discrimination allegation. *See Jones*, 856 F.3d at 1290. Again, nothing in Ms. Martinez's EEO charge that was undisputedly filed suggests any type of race discrimination. [#33-14]. Examining the second EEO charge by Ms. Martinez reveals no mention of race. [#36-8]. Therefore, there is simply no indication that Defendant would have been on notice of any allegations of race discrimination, or that the facts investigated by the EEO would have subsumed inquiry into any race discrimination. Accordingly, this court finds that Plaintiff has not exhausted her administrative remedies and Defendant is entitled to summary judgment as to any claim for race discrimination.

        **B.**        **On the Merits, Summary Judgment is Appropriate**.

Even if Plaintiff's claim for race discrimination could survive Defendant's challenge based on lack of exhaustion of administrative remedies, summary judgment is appropriate. To survive summary judgment on a Title VII claim of discrimination based on race, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bekkem v. Wilkie*, 915 F.3d 1258, 1261 (10th Cir. 2019). Plaintiff has not come close to such a showing on either point.

The undisputed material facts do not establish any instances of racial discrimination against Plaintiff. In her Response, Plaintiff begins with the misstatement that "Defendant concedes that Plaintiff meets the first three elements of her *prima facie* claim[]." [#36 at 14]. Defendant has made no such concession. [#37 at 9]. In addition, there is not sufficient evidence, even taken in the light most favorable to Ms. Martinez, to support the elements for a race discrimination claim. Plaintiff fails to adduce any direct evidence that her adverse employment decisions were racially motivated or indirect evidence that any similarly-situated individual who was of a different race was treated differently.

Nor does Plaintiff point to any evidence in the record that suggests that Defendant's legitimate, non-discriminatory reasons for her discipline and ultimate termination were a pretext for race discrimination. The Plaintiff notes the three disciplinary letters issued against Plaintiff. [#36 at 15]. But she does not challenge the substance of those letters, which reveal persistently insubordinate and unprofessional behavior, chronic tardiness, and poor work performance. *See, e.g.*, [#33-15 at 2–3, 7 (July 6 Letter detailing tardiness); *id.* at 4, 5 (insubordinate behavior); *id.* at 4, 6 (poor work performance including neglecting "a core job responsibility"). Contrary to Plaintiff's position that, "It is unclear exactly the violations the Appellant [sic] committed to receive the written reprimand in August except for an issue with insurance certifications," the court finds the Letters' exhaustive cataloging of Plaintiff's misconduct to be sufficient to state a legitimate, non-discriminatory reason for her termination. [#36 at 15].

Plaintiff's conclusory argument that her discipline was "a pattern of Ms. Padalecki as it relates to Hispanic female employees" relies on the affidavit of Ms. Trujillo. [*Id.*]. Even if the court were to credit Ms. Trujillo's statements, the essential flaw in Plaintiff's case would remain—there is no evidence that Defendant acted out of racial animus, but there is a wealth of unchallenged evidence documenting Plaintiff's misconduct at work and eventual dismissal on that basis. That is precisely what is documented in the Letter of Dismissal dated July 18, 2017. [#33-20]. Plaintiff concedes the validity of this Letter. *Compare* [#33 at 3 ("The conduct described in [the Letter of Dismissal at #30-20] led to Plaintiff's termination on July 18, 2017.")], *with* [#36 at 2 ("Plaintiff does not dispute [#33-20]. Though those facts are undisputed, Defendant omits critical contextual information contained in Plaintiff's Statement of Additional Facts.")]. Essentially, Plaintiff's claim is that the Letter accurately describes her misconduct, but her dismissal is nonetheless pretextual. At this juncture of this case, Ms. Martinez's arguments, unsubstantiated by admissible

13

evidence, is insufficient to save her race discrimination claim from summary judgment in Defendant's favor.

## II. Summary Judgment is Also Appropriate for Plaintiff's Sex Discrimination Claims.

Defendant also moves for summary judgment on Plaintiff's claim that she was subject to sex discrimination as a nursing mother. [#33 at 8]. To establish a prima facie case for disparate treatment based on gender, Plaintiff must prove (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). If Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the Department to articulate a legitimate, nondiscriminatory reason for the adverse action. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). The burden then returns to Plaintiff to demonstrate pretext—that is, to show that the employer's proffered reason is untrue and that prohibited discrimination is the true reason for the adverse action. *Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010).

### A. Adverse Employment Action

First, Defendant argues that summary judgment in its favor is appropriate because Plaintiff has not established she suffered an adverse employment action. An "adverse employment action" is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy*, 480 F.3d at 1203 (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004)). But a mere inconvenience or alteration of job responsibilities is not an adverse action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). In interpreting whether an action constitutes a sufficient "adverse employment action," the United States Court

of Appeal for the Tenth Circuit ("Tenth Circuit") requires courts to examine the "unique factors relevant to the situation at hand." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (quotation omitted).

Courts have found even onerous and inconvenient logistical changes to be insufficient to constitute adverse employment action. *See Sanchez*, 164 F.3d at 532 (sextupling of commute time on transfer to another school was merely inconvenient); *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000) (moving plaintiff's desk, monitoring her phone calls, and suggesting plaintiff might do better in another department not sufficient). Similarly, courts have found significant alternations of job responsibilities insufficient to meet Plaintiff's burden. *See Tran v. Trustees of State Colleges in Colo.*, 355 F.3d 1263, 1268 (10th Cir. 2004) (transfer to new department plaintiff was initially not trained for insufficient); *Aquilino v. Univ. of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001) (removal from dissertation committee not sufficient). One factor in determining an adverse action is whether the action "causes harm to future employment prospects." *Hillig*, 381 F.3d at 1031. An employer's act must do more than *de minimis* harm, and must be materially adverse to the Plaintiff's job status. *Id.*; *see also Belgasem v. Water Pik Techs., Inc.*, 457 F. Supp. 2d 1205, 1215 (D. Colo. 2006).

Here, Plaintiff relies on several actions to constitute an adverse employment action: (1) That Ms. Martinez was told to stop using the vacant office to express breast milk because it was assigned to another employee [#36 at 14; Undisputed Fact ¶ 4]; (2) Mr. Maxfield's comment that she should not have to work while expressing breast milk [#36 at 14]; (3) In August 2016, Plaintiff received a written reprimand [#36 at 15; Undisputed Fact ¶ 15] for persistent tardiness, unprofessional behavior, and poor work performance; (4) Ms. Martinez was denied funds for her Latino Business Training [#36 at 15]; (5) Ms. Martinez was suspended and later terminated [#36

15

at 15–16; Undisputed Fact ¶¶ 14–19].[12] Of these contentions, the court finds that Ms. Martinez' suspension and termination constitute valid adverse employment actions under Title VII.[13] Though Defendant argues that Ms. Martinez' termination was not exhausted, this court respectfully disagrees. The remainder do not rise to the level of adverse employment actions under applicable Tenth Circuit law.

B. **Pretext**

Though Defendant argues that Plaintiff cannot pursue any claims based on her termination due to failure to exhaust, it does not substantively challenge Ms. Martinez' ability to establish a *prima facie* case of discrimination based on that termination. *See* [#33 at 13]. Instead, it then accepts a *prima facie* case [*id.*], and focuses its argument on Plaintiff's failure to establish a genuine issue of material fact that its legitimate, non-discriminatory reasons for Ms. Martinez' suspension and termination were pretextual.

Defendant has offered Plaintiff's extensive disciplinary record to demonstrate a non-discriminatory basis for her termination. This is an "exceedingly light" burden as Defendant need offer only a legitimate and facially non-discriminatory reason for the adverse employment action. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quoting *Williams v.*

---

[12] Plaintiff offers other facts as well, but did not include such facts in her proposed Undisputed Material Facts in contravention with the court's practice standards. NYW Civ. Practice Standard 56.1. In any case, the court declines to adopt them as undisputed facts as Plaintiff provides insufficient evidence to substantiate the proposition that "Defendant forced her to use an unused bathroom" which had "leaks and magnets." [#36 at 14]. Similarly, Plaintiff fails to adduce relevant evidence that, "Others [sic] upper managers constant [sic] asked her why she was still milking and how long she was going to continue expressing breast milk." [*Id.*].

[13] The August action disciplining plaintiff did no more than verbally reprimand her and thus does not constitute an adverse employment action. [#33-16 at 1]. The later-filed December 22 Letter did reduce Plaintiff's pay and so would constitute an adverse employment action, but Plaintiff makes no mention of this later discipline. [#33-18 at 1].

*FedEx Corp. Servs.*, 849 F.3d 889, 899–900 (10th Cir. 2017)). As noted before, the three disciplinary letters detailing Plaintiff's misconduct and poor work performance which ultimately resulted in Plaintiff's termination are unrebutted in substance. [#36 at 2 (only claiming that the letters lack context)]. Thus, Defendant has met its "exceedingly light" burden, and now the burden shifts to Plaintiff to prove pretext by a preponderance of the evidence. *DePaula*, 859 F.3d at 970.

A plaintiff may show pretext by demonstrating the "proffered reason is factually false," or that "discrimination was a primary factor in the employer's decision." *Id.*; *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1194 (10th Cir. 2016). "In establishing pretext, an employee can show the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Foster*, 830 F.3d at 1194 (citation and quotation omitted). In determining whether the stated reason for a decision was pretextual, a court examines the facts as they appear to the person making the decision at the time the decision was made, not the plaintiff's subjective post-hoc evaluation of the situation. *DePaula*, 859 F.3d at 971. In this case, Ms. Martinez has failed to adduce sufficient evidence to establish a genuine issue of material fact as to pretext to justify the denial of summary judgment.

Plaintiff offers limited evidence of pretext, primarily relying on attorney argument— "Plaintiff had outstanding reviews and was a treated differently than others not in her protected class. Defendants' proffered reasons for disciplining Plaintiff are mere pretext for discriminating against her based on her race and sex. Defendant's reasons for demoting Plaintiff are unworthy of credence and belief." [#36 at 16]. Setting aside the fact that Plaintiff was terminated and not demoted, Plaintiff points to no other similarly situated individuals were treated differently, other than "male counterparts that have newborns do not have to go through the harassment that Plaintiff had to endure." [#36 at 14]. Nor does she point to any women who were similarly situated, with

similar discipline records, who were not subject to the same type of discipline and termination but were not nursing. Indeed, no comparators at all are named in the Response to the Summary Judgment or identified in the exhibits to the Response. Plaintiff's *sole* evidence appears to be that Plaintiff's relationship soured when Ms. Padalecki was named her immediate supervisor, but Plaintiff offers no evidence that she did not engage in the noted misconduct and offers no evidence for a fact-finder to conclude that Ms. Padalecki was motivated by animus against a protected class as opposed to Plaintiff's poor performance. Accordingly, Defendant is entitled to summary judgment as to Plaintiff's claims of discrimination based on gender.[14]

### III. Summary Judgment in Favor of Defendant is Appropriate for Plaintiff's Retaliation Claim.

Plaintiff's third and final claim is for retaliation, arguing that her discipline and eventual termination was premised on her reporting ongoing harassment and discrimination. [#1 at 9–10]. To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008) (quoting *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123–24 (10th Cir. 2007)). Unless there is "very close temporal proximity between the protected activity and the retaliatory conduct," a plaintiff must offer additional evidence to establish causation. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Additionally, the

---

[14] Defendant also moves for summary judgment on a claim for sexual harassment. [#33 at 5]. But despite the intermittent use of the term "harass," the operative Complaint does not state a claim for sexual harassment and Plaintiff does not argue against summary judgment as to a sexual harassment claim in her Response. [#36]. The court finds that the Complaint does not raise a claim for sexual harassment. *See also* [#18 at 2 (Scheduling Order reciting claims and not mentioning a claim for sexual harassment)]. Even if one was to be inferred, Plaintiff has failed, in light of Defendant's motion arguing the lack of evidence to support such a claim, to point to any evidence in the record that would satisfy the elements of a claim for sexual harassment.

requirement to administratively exhaust remedies applies to each individual claim, and so a claim of retaliation must be individually exhausted just as Plaintiff's other claims must be. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

Construing the record in the most favorable light to Plaintiff, there may be a material dispute over whether what is characterized as a second EEO charge and whether the ensuing communications between the EEO investigator and Ms. Martinez is sufficient to exhaust administrative remedies. Nevertheless, Ms. Martinez' claim for retaliation still fails. Plaintiff relies on a temporal inference to support her claim, i.e., her disciplinary record began following an initial EEOC Complaint in 2015, but offers no other evidence as to the causal connection between the protected activity and her suspension and ultimate termination.

Defendant argues that Ms. Martinez has failed to exhaust her administrative remedies as to her claim for retaliation [#33 at 18-19], or should be otherwise "dismissed" because she cannot establish a *prima facie* claim for retaliation. [*Id.* at 19]. Temporal proximity can be an important part in proving retaliation, but it is insufficient to establish a *prima facie* case when it is the entirety of Plaintiff's claim that her otherwise well-documented and substantively unchallenged disciplinary record is in retaliation for a complaint filed several months prior. *Equal Employment Opportunity Comm'n v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1194 (D. Colo. 2018). Here, Plaintiff's initial Complaint to the EEOC was made on September 10, 2015, [#33-14], and her first disciplinary letter was issued July 6, 2016, [#33-15], with her eventual termination on July 18, 2017, [#33-20]. The temporal proximity between these events does not itself support an inference of causal connection, and without further evidence, Plaintiff has not made out a *prima facie* case and Defendant is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1) Defendant the City and County of Denver's d/b/a Department of Aviation Motion for Summary Judgment [#33] is **GRANTED**;

(2) Costs are **AWARDED** to Defendant as the prevailing party under Federal Rule of Civil Procedure Rule 54(d)(1); and

(3) The Clerk of the Court is directed to enter final judgment in favor of the Defendant, the City and County of Denver, and to terminate the case.

DATED: April 5, 2019         BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge